

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Linda Farrington, | ) | Docket No. 2017-06-0049 |
| Employee, | ) | |
| v. | ) | |
| NIA Association, | ) | State File No. 68478-2016 |
| Employer, | ) | |
| And | ) | |
| Bridgefield Cas. Ins. Co., | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF
## (DECISION ON THE RECORD)

This case came before the undersigned Workers' Compensation Judge on June 12, 2017, on Ms. Farrington's Request for Expedited Hearing and the parties' joint request that the Court decide the matter via a record review rather than an evidentiary hearing.

The present focus of this case is Ms. Farrington's entitlement to additional medical benefits, specifically, a referral to an orthopedic specialist.[1] NIA relied upon the opinion of the authorized treating physician that her current need for treatment is not related to the work accident, while Ms. Farrington cited a record from her primary care physician referring her for an orthopedic consult. The Court holds that Ms. Farrington is unlikely to prevail at a hearing on the merits on this issue and therefore denies her requested relief.

### History of Claim

The documentary evidence established the following facts. Ms. Farrington sustained injuries to her head and neck when a fire extinguisher fell on her while working for NIA on September 1, 2016.

---

[1] The Dispute Certification Notice additionally lists Ms. Farrington's entitlement to temporary disability benefits as an issue. It also states as a defense that the parties dispute entitlement to reimbursement for sums paid to unauthorized providers. However, the parties' position statements limit the issue to whether an orthopedic referral is appropriate. The Court considers the additional issues waived at this time.

1

NIA accepted the claim. It offered a panel, and Ms. Farrington chose Dr. Stephen Kent, who treated her for approximately three months. At the initial visit, he diagnosed a neck strain and a facial contusion and placed Ms. Farrington on restrictions prohibiting driving, lifting more than twenty pounds and climbing. He additionally referred her for a cervical MRI, which revealed multilevel spinal stenosis and multilevel degenerative disk disease. At a November 23 visit, Dr. Kent diagnosed cervicalgia and lumbago, noting, "Subjective complaints significant." Records from that date also state "spoke with adjuster." At Ms. Farrington's next visit, Dr. Kent completed a Final Medical Report placing her at maximum medical improvement. The Report returned her to regular duty as of December 7 and stated that she suffered no permanent impairment. Treatment notes from that visit state, "I do not feel patient's subjective complaints are work related." The notes additionally lift her work restrictions "if cleared by PCP."

Ms. Farrington's Affidavit states that she disagreed with Dr. Kent's opinion on her impairment, so she saw N.P. Gabriele Roberts at Matthew Walker Comprehensive Health Center on December 7. N.P. Roberts referred her to an orthopedist.

Upon learning of the orthopedic referral, NIA's counsel sent a letter to Dr. Kent to confirm his opinion on causation. The letter sought his responses to two questions. The first question asked, "What percentage of Ms. Farrington's overall neck/back diagnosis, and need for medical treatment, do you feel are related to the work-injury, versus pre-existing or other non-work related conditions?" The response offered two options: "Related to WORK injury" or "NOT related to work, i.e. degenerative, pre-existing, etc." (Emphasis in original.) Dr. Kent wrote that the need for treatment is "0%" related to work and "100%" not related to work, i.e. degenerative, preexisting, etc. The second question asked, "Based upon your review of surveillance conducted on November 26 and 28, 2016, do you feel that Ms. Farrington's presentation in your office on November 23 and December 7, 2016 was consistent or inconsistent with the activity she was engaged in during the surveillance?" The letter offered two responses: "Consistent, with no indication of symptom magnification," or "Inconsistent, which indicates malingering or symptom magnification." Dr. Kent checked the second option. The surveillance video showed Ms. Farrington ascending stairs, driving to her mailbox and later driving to the store on November 26. On November 28, she appears to be carrying several bags of groceries.

Ms. Farrington's Affidavit stated that on March 7, Dr. Hubert Gaskin with Matthew Walker signed the referral to see an orthopedist, but NIA denied the request. Ms. Farrington returned to Dr. Gaskin on March 28. The records indicate that he examined her and again referred her to an orthopedist. Ms. Farrington's counsel additionally sent him a letter, which asked, "Is a referral to an orthopedic specialist reasonably necessary to evaluate and treat the neck injuries Ms. Farrington sustained as a result of a fire extinguisher hitting her on September 2, 2016?" He checked "yes."

2

## Findings of Fact and Conclusions of Law

*Applicable Legal Principles*

As in all workers' compensation actions, Ms. Farrington, as the employee, has the burden of proof on the essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, she only has to come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits in order to meet her burden. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

In addition to the general legal principles above, the Court must determine whether Ms. Farrington's present need for treatment results from the accepted injury event. An injury does not include the aggravation of a preexisting disease unless it can be shown that the aggravation arose primarily out of and in the course and scope of employment. Further, an injury causes the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent in causing the need for medical treatment, considering all causes. In determining cause, the opinion of the treating physician selected from a panel is presumed correct on the issue of causation, but this presumption is rebuttable by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-102(14) (2016), et seq.

*Analysis*

Here, NIA relies on Dr. Kent's notes, including the Final Medical Report and the causation letter, to support its position that Ms. Farrington's current need for treatment is not related to the work incident.

The treatment notes from the date of injury through November make no suggestion that Ms. Farrington's injury is not work-related or that Dr. Kent doubted the sincerity of her complaints. Following the November 23 visit–where the notes indicate he "spoke with adjustor"–he substantially altered his opinion following her next visit and offered little rationale for doing so. The Final Medical Report released her from treatment, despite notes from that same day that lifted restrictions only "if cleared by PCP."

Further, while his reply to the causation letter conveyed his opinion that Ms. Farrington's ongoing need for medical treatment is "0%" related to work," the Court is troubled by counsel's wording of the question regarding causation. He asked Dr. Kent to give a percentage of Ms. Farrington's need for treatment that is "related to the work injury, versus pre-existing or other non-work-related conditions." Counsel stated the

question as an either/or proposition: Either it is related to the work injury, or it is related to preexisting conditions. This is problematic, in that the definition of "injury" within section 50-6-102(14) does not state that the two are mutually exclusive. Rather, it states that an aggravation of a preexisting condition is compensable "if it can be shown that the aggravation arose primarily out of and in the course and scope of employment." Further, NIA presented Dr. Kent with video surveillance and asked him to make a medical determination on malingering on that basis, where his previous treatment notes do not mention malingering. The Court accords little weight to the opinions contained within the causation letter and likewise finds the surveillance footage neither helpful nor persuasive.

However, since Dr. Kent is the authorized treating physician, his causation opinion is presumed correct, although rebuttable by a preponderance of the evidence. Ms. Farrington's rebuttal evidence is the referral from Dr. Gaskin. It appears that Dr. Gaskin based his recommendation on treatment notes from a nurse practitioner and one examination that he performed. Notes from Matthew Walker offer no opinion on causation. Ms. Farrington argued that Dr. Kent failed to address whether there was an aggravation of a preexisting condition caused by her September 2 injury. Significantly, however, her follow-up letter failed to ask Dr. Gaskin that same question.

In sum, although the Court has only marginal confidence in Dr. Kent's causation opinion, the Court finds Dr. Gaskin's examination notes and letter are insufficient to rebut Dr. Kent's opinion by a preponderance of the evidence. Thus, the Court holds that Ms. Farrington failed to show her current need for treatment arises primarily out of the course and scope of her employment and must deny her request for medical benefits. As a matter of law, Ms. Farrington has not come forward with sufficient evidence from which this Court concludes that she is likely to prevail at a hearing on the merits. This ruling does not preclude Ms. Farrington from garnering additional evidence to attempt to rebut the presumption at a later date.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Farrington's claim against NIA and its workers' compensation carrier for the requested additional medical benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on **July 31, 2017, at 8:45 a.m.** Central. You must call **615-532-9552** or toll-free **866-943-0025** to participate in the Hearing. Failure to call may result in a determination of the issues without your further participation.

4

**ENTERED this the 12th day of June, 2017.**

JUDGE KENNETH M. SWITZER
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Ms. Farrington's Affidavit
2. Compilation Medical Records
   A. DoctorsCare
   B. Advance Physical Therapy & Rehab Svc
   C. Matthew Walker Comprehensive Health Center
3. Choice of Physician form
4. Notice of First Payment of Compensation
5. First Report of Injury
6. Wage statement
7. Final medical Report, Dr. Kent
8. Causation letter, Dr. Kent
9. Causation letter, Dr. Gaskin
10. Surveillance video
11. DoctorsCare website biography of Dr. Kent
12. Dr. Kent CV

Technical record:
1. Petition for Benefit Determination
2. Employer's Position Statement
3. Dispute Certification Notice and all attachments
4. Request for Expedited Hearing
5. Emails: positions re AWW/CR
6. Employer/Carrier's Response to Request for Expedited Benefits
7. Employee's Position Statement
8. Notice of Erratum and Correction to Employer/Carrier's Response to Request for Expedited Hearing
9. Agreed Order for Expedited Hearing Decision on the Record

5

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 12th day of June, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Timothy Lee, Employee's Counsel | | | X | tim@timleelawfirm.com |
| Stephen Morton, Employer's Counsel | | | X | Stephen.morton@mgclaw.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
WC.CourtClerk@tn.gov

6